# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

STEPHANIE NICOLE                                    CIVIL ACTION
WATSON


VERSUS                                              NO. 15-564-JJB-RLB


CAROLYN COLVIN,
COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION


## <u>NOTICE</u>

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report.  A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on December 22, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**STEPHANIE NICOLE**                                          **CIVIL ACTION**
**WATSON**


**VERSUS**                                                   **NO. 15-564-JJB-RLB**


**CAROLYN COLVIN,**
**COMMISSIONER OF**
**THE SOCIAL SECURITY**
**ADMINISTRATION**

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Stephanie Nicole Watson (Plaintiff), seeks judicial review of a final decision of the

Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. §

405(g) denying Plaintiff's applications for Supplemental Security Income and Disability

Insurance Benefits under the Social Security Act. (R. Doc. 1).  Having found all of the

procedural prerequisites met (Tr. 1-3), the Court has properly reviewed Plaintiff's appeal. *See* 42

U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the

administrative law judge if the request for review is denied, is binding unless you . . . file an

action in Federal district court . . . .").  For the reasons given below, the Court **RECOMMENDS**

that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED**

**with prejudice**.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income alleging that she became disabled on November 28, 2011 because of depression, anxiety, addition problems, Attention Deficit Hyperactivity Disorder (ADHD), back pain, broken back/T-12 Fusion, overactive thyroid and ovarian cysts. (Tr. 152, 205).  Plaintiff's application was eventually denied by an Administrative Law Judge (ALJ), who first held an administrative hearing (Tr. 29-69) before issuing an unfavorable decision on July 2, 2014. (Tr. 12-23). Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 29, 2015. (Tr. 1-3).  The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)

(quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).  If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.   ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520(a)(4).  The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.  If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process).  First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  Second, the claimant must prove his or her

impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff met the insured status requirements through March 31, 2014.

2. Plaintiff had not engage in substantial gainful activity since November 28, 2011— the alleged onset date.

3. Plaintiff suffered from the following severe impairments: degenerative disc disease with lumbar radiculopathy and generalized anxiety disorder with polysubstance dependence, in remission.

4. Plaintiff did not meet or medically equal a listing — specifically, Listing 1.02 (Major Dysfunction of a Joint), Listing 1.04 (Disorders of the Spine), Listing 12.04 (Affective Disorders), and Listing 12.09 (Substance Addiction Disorders).

5. Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, except she must be allowed to change positions in her work space, resulting in claimant being off-task less than five percent of the workday.

6.      Plaintiff is capable of performing her past relevant work as an Administrative Assistant (DOT No. 169.167-010, sedentary, SVP 7) and Customer Service Representative (DOT No. 239.362-014, sedentary, SVP 5).

7.      Plaintiff had not met the Social Security Act's definition of disability at any time between her alleged onset date of November 28, 2011 and the ALJ's July 2, 2014 decision.

(Tr. 12-23).

## IV.   DISCUSSION

Plaintiff filed an Opening Brief (R. Doc. 9) in support of her appeal on March 3, 2016.  In her brief, Plaintiff identified several assignments of error, for which she seeks judicial review.

First, Plaintiff claims that the ALJ erred at Step 3 by ignoring Plaintiff's physical limitations, which clearly satisfy Listing 1.04(A).  In the alternative, Plaintiff suggests the ALJ erred in denying her post-hearing request for medical expert testimony regarding medical equivalence.

Next, Plaintiff claims that substantial evidence does not support the ALJ's RFC finding, as Plaintiff testified that her impairments would cause her to be absent from work at a rate inconsistent with any type of sustained employment.

Finally, Plaintiff argues that the ALJ erred at Step 4 by relying on faulty or incomplete VE testimony.  Specifically, Plaintiff takes issue with the VE's alleged failure to offer any numbers, estimates, statistics or data regarding the number of employers who might accommodate her limitations.

The Court has considered Plaintiff's assignments of error in light of the parties' arguments, the record as a whole and the applicable law, but finds none of the alleged errors warrant reversal or remand.

A.      **Listing 1.04A is not met.**

At step three, the ALJ considers the severity of the claimant's impairments without regard to vocational factors.  The ALJ applies the Social Security Administration's Listing of Impairments, which "describes for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a).  A claimant whose impairment (or combination of impairments) meets or equals the criteria of a Listing is disabled and entitled to benefits.  For that reason, the criteria in the Listings are "demanding and stringent." *Falco*, 27 F.3d at 162.  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan*, 493 U.S. at 529-32.

The ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are insufficiently severe to meet any listed impairment.  A bare and summary conclusion that a plaintiff does not meet the criteria of any Listing is beyond meaningful judicial review.  *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).  Even if a court determines that the ALJ failed to state the reasoning for an adverse determination at step three, a reviewing court must still evaluate whether the error was harmless. *Audler*, 501 F.3d at 448.

After a thorough "review of the objective evidence," which did not include any medical findings of equivalence, the ALJ found Plaintiff's impairments were "not severe enough to meet

or medically equal [Listing 1.04]."[1] (Tr. 15).  Listing 1.04A, which Plaintiff insists is met,

describes disorders of the spine:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A.  The ALJ's limited explanation states that "the

evidence of record does not establish that the claimant's impairments meet or medically equal

the severity" of Listing 1.04 and "the State Agency medical consultants . . . have reached the

same conclusion." (Tr. 15).

Plaintiff alleges the ALJ's findings at step 3 were ambiguous and contradicted by

substantial evidence. (R. Doc. 9 at 7-11).  The Court agrees with Plaintiff to the extent she argues

the ALJ's opinion is ambiguous, as it did not specifically discuss Plaintiff's physical

impairments.  The ALJ fails to point to any objective medical evidence in the record to support

her finding and her conclusory determination regarding Listing 1.04 was erroneous. *See Audler*,

501 F.3d at 448.

But even though the ALJ erred in failing to explain her finding that Plaintiff did not meet

Listing 1.04A, the Court must continue to a harmless error analysis. *See Morris v. Bowen*, 864

F.2d 333, 334 (5th Cir. 1988).  Procedural perfection is not required in administrative hearings,

---

[1] The ALJ wrote that in "making [his Step 3] determination, [she] considered the criteria of sections 1.04, 1.02, 12.0[4] and 12.09 of the Listing of Impairments." (Tr. 15, 16).  The ALJ's substantive discussion was limited however, to the criteria of Listings 12.04 and 12.09. (Tr. 15-17).

and a court will not vacate a judgment unless "the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).  Thus, Plaintiff must establish that the ALJ's error casts doubt on the existence of substantial evidence supporting the ALJ's decision. *See Morris*, 864 F.2d at 335.

Plaintiff alleges the ALJ's assertion that the medical evidence does not contain findings severe enough to meet Listing 1.04A is clearly wrong. (R. Doc. 9 at 8).  According to Plaintiff, the ALJ ignored the record evidence indicating "(1) nerve root compression through the necessary neuro-anatomic distribution of pain, (2) limitations of motion and motor loss, (3) chronic nonradicular pain and weakness, and (4) positive straight-leg raising tests." (R. Doc. 9 at 8).

Contrary to Plaintiff's assertions, the record does not indicate that her impairments meet or equal the criteria of Listing 1.04A. *See Sullivan*, 493 U.S. at 530 ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").  First, Plaintiff mostly points to her subjective complaints documented by doctors upon examination. (R. Doc. 9 at 8-10) ("Complaints of right sided lower back pain (Tr. 336); "Complains of radiating pain" (Tr. 558); "Complains of radiating low back pain" (Tr. 560); "Complains of back pain" (Tr. 550); "Complains of right hip and right buttock pain" (Tr. 567)).  Plaintiff's subjective complaints, however, are not competent medical evidence of listing-level severity. *See* 20 C.F.R. pt. 404, subpt. P, app'x 1 § 1.00D (The "[p]hysical findings" cited in support of listing-level severity "must be determined on the basis of objective observation during the [doctor's] examination and not simply a report of the individual's allegation; e.g., 'He says his leg is weak, numb.'").  Beyond that, the objective evidence of record does not satisfy Listing 1.04A.

Listing 1.04A requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, [and] motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . ."

To begin, the Court's review of the record does not support a finding of nerve root compression and, most importantly, Plaintiff does not cite to a single finding of compression in the record.  The only objective finding that might indicate compression occurred on January 25, 2012, when Dr. Charles Eberly reported that the result of a nerve conduction study "suggests some mild nerve root irritation at LS-L4" and "could imply left SI radiculopathy, but is not diagnostic of that by itself." (Tr. 540).  Nonetheless, a definitive finding of compression or radiculopathy, which can be indicative of nerve root compression, were not made. *See, e.g.*, *Green v. Astrue*, 2009 WL 310284, at *2 (D. Az. Feb. 6, 2009) (diagnosis of cervical radiculopathy can indicate compression); *Smith v. Astrue*, 2011 WL 722539, at *11 (N.D. Ill. Feb. 22, 2011) ("chronic radiculopathy" was "indicative of nerve root compression").

On February 26, 2013, Dr. Benedict Idowu similarly diagnosed "[rule out] right lumbosacral radiculopathy" after first examining Plaintiff. (Tr. 559).  However, during Plaintiff's follow-up appointment on March 13, 2013, Dr. Idowu gave a definitive diagnosis of "lumbosacral syndrome" — not radiculopathy. (Tr. 558).  Consistent with Dr. Idowu's treatment notes, Dr. Eric Oberlander found "no spondylolistheses" based on x-rays of Plaintiff's spine and his physical examination of Plaintiff in January of 2012. (Tr. 341).  Like radiculopathy, spondylolisthesis may indicate compression of a nerve root in some circumstances. *See, e.g.*, *Mack v. Comm'r of Soc. Sec. Admin.*, 2008 WL 555366, at *2 n.4 (N.D. Tex. Feb. 29, 2008) ("Spondylolisthesis is the forward displacement of a lumbar vertebra on the one below it and

especially of the fifth lumbar vertebra on the sacrum. This produces pain caused by compression of nerve roots."). These treatment records, along with Plaintiff's inability to point out any findings of compression, are insufficient to show nerve root compression in general, let alone meet Listing 1.04A's requirement of "nerve root compression characterized by neuro-anatomic distribution of pain." 20 C.F.R., pt. 404, subpt. P, app'x 1 § 1.04A.

In addition to nerve root compression, Plaintiff cannot show that she meets Listing 1.04(A)'s requirement of positive straight leg raising tests in both the seated and supine positions. Plaintiff has pointed to only one instance in the record of positive straight leg raising on the right leg, which occurred on February 29, 2012 — just 3 months after her spinal fusion. (Tr. 567); (Tr. 497-517) (Plaintiff underwent a fusion of the thoracic spine on November 29, 2011, following a motor vehicle accident). The treatment notes do not indicate whether the test was performed in both the seated and supine position, as is required by the Listing. *Miller v. Astrue*, 2012 WL 3255595, at *5 (M.D. La. June 25, 2012) (Plaintiff was not disabled at step 3, as "Listing 1.04 requires positive straight leg raise tests in both the sitting and supine positions, and the record is devoid of any evidence that the few positive straight leg raise tests conducted on plaintiff occurred in both the sitting and supine positions."). Moreover, Dr. Adoboye Francis, who examined Plaintiff on December 28, 2012 — over a year after Plaintiff's accident and surgical fusion — reported "negative bilateral straight leg raising test." (Tr. 425). *See* 20 C.F.R. pt. 404, subpt. P, app'x 1 § 1.00H(1) ("Musculoskeletal impairments frequently improve with time or respond to treatment. Therefore, a longitudinal clinical record is generally important for the assessment of severity and expected duration of an impairment . . . .").

A single instance of a positive straight leg raising test, which was conducted shortly after Plaintiff's surgical fusion and failed to indicate whether it was performed in both the seated and

supine positions, is insufficient to satisfy Listing 1.04A. *See Nieves v. Astrue*, 2013 WL 1192013 at *7 (W.D. Tex. March 21, 2013) (Listing 1.04A was not met where straight leg raising tests were only intermittently positive and failed to indicate the position – sitting or supine – in which they were performed.); *Carrillo v. Astrue*, 2010 WL 2136438, at *6 (W.D. Tex. May 26, 2010) (substantial evidence support ALJ's finding that claimant did not meet Listing 1.04A where record did not show positive straight leg raising tests, both sitting and supine, "for any period of 12 continuous months"); *Holman v. Astrue*, 2011 WL 3847146, at *8 (S.D. Tex. Aug. 30, 2011) ("[I]t was not error for the ALJ to require a history of objective medical documentation showing that – over the period of relevant time – Holman consistently experienced neurological deficits, such as muscle weakness or sensory loss, as a result of her cervical radiculopathy."); 20 C.F.R. pt. 404, subpt. P, app'x 1 § 1.00D ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation.").

Listing 1.04A also requires motor loss accompanied by sensory or reflex loss. Evidence of motor loss includes muscle weakness, atrophy, or an inability to walk on the heels or toes, to squat or to arise from a squatting position. *See, e.g., Zimmerman v. Astrue*, 288 F. App'x 931, 937 (5th Cir. 2008) (Claimant did not meet Listing 1.04A where claimant's "motor strength was '5/5 in all muscle groups,' suggesting no motor loss."); *Pannell v. Astrue*, 2012 WL 4341813, at *4 (N.D. Tex. Sept. 21, 2012) ("motor loss (as shown by muscle weakness)"); *Davis v. Astrue*, 2009 WL 2408175, at *3 (S.D. Tex. Aug. 3, 2009) (Listing 1.04A was not met where "the record did not contain evidence of any motor or reflex loss or atrophy, and in fact the evidence indicated 'muscle strength is 5/5 in the lower extremities. That is, no weakness. Hand grip is good. No muscle atrophy was noted.'"); 20 C.F.R. pt. 404, subpt. P, app'x 1 § 1.00(E)(1) (evidence of

motor loss may include an "inability to walk of the heels or toes, to squat, or to arise from a squatting position"). Evidence of sensory loss includes numbness and paresthesia. *See Strong v. Astrue*, 2011 WL 7394717, at *4 (W.D. La. Dec. 23, 2011) ("numbness" constitutes evidence of "[s]ensory and reflex loss"); *Williams v. Astrue*, 2010 WL 989216, at *4 (W.D. La. March 15, 2010) ("parasthesia or sensory loss").

While there are objective finding of weakness and mild atrophy 2 months after Plaintiff's November 2011 car accident and associated spinal fusion (Tr. 569), the remaining (and more recent) record evidence consistently indicates findings of normal or full strength in all extremities and no signs of atrophy upon examination. (Tr. 425) (no atrophy, "normal muscle tone and strength"); (Tr. 448, 468, 485, 488, 491, 495, 528) (normal strength); (Tr. 558, 559) (motor strength was 5 out of 5 in all extremities); (Tr. 448) ("normal motor" and "normal strength"); (Tr. 549) (motor strength within normal limits); (Tr. 485) ("normal motor observed").

As evidence of motor loss, Plaintiff points to Dr. Oberlander's March 20, 2012 treatment notes reporting that "On physical examination today, she demonstrates weakness in every major muscle of her lower extremities . . . ." (Tr. 338). However, Plaintiff ignores Dr. Oberlander's immediate qualification of that finding: "She seems to have poor effort and demonstrates significant weakness on exam, yet she walks into the clinic and leaves with no difficulty in ambulating." (Tr. 338). As such, the objective evidence of record does not demonstrate motor loss, as Plaintiff suggests.

Plaintiff was also observed as having a steady gait and being able to ambulate without difficulty on a regular basis. (Tr. 466, 476, 484-85) (arrival mode – walking; ambulates without difficulty); (Tr. 433) (Plaintiff was "walking around" the hospital "in no acute distress" after being seen in the emergency room on January 6, 2013 following an alleged fall in the shower.);

(Tr. 425) (normal gait); (Tr. 459) (moves all extremities freely).  Upon examination, Dr. Francis consistently reported Plaintiff as being able to stand and walk on her heels and toes (Tr. 425), indicating Plaintiff does not suffer from motor loss. *See* 20 C.F.R. pt. 404, subpt. P, app'x 1 § 1.00E(1) ("Inability to walk on the heels or toes . . . may be considered evidence of significant motor loss.").

The record likewise does not indicate sensory or reflex loss at a level consistent with Listing 1.04A.  While Plaintiff reportedly experienced some numbness just 2 weeks after her spinal fusion surgery (Tr. 342), her doctors did not take any action at that time based on the recentness of Plaintiff's surgery.  Indeed, later treatment notes do not report objective findings of numbness that would indicate the problem was ongoing. (Tr. 549) (bilaterally, sensory within normal limits); (Tr. 448) ("normal sensory observed, normal motor observed"); (Tr. 425) (normal sensation); (Tr. 528) (normal sensory).  Doctors likewise reported normal reflexes. (Tr. 338) (reflexes normal); (Tr. 425) (Deep Tendon Reflexes: 2+); (Tr. 548-49) (reflexes are equal bilaterally); (Tr. 559) (reflexes within normal limits).

Finally, Plaintiff did exhibit limited range of motion soon after her November 2011 accident and spinal fusion, as required by Listing 1.04A. (Tr. 503, 552).  But beginning shortly after, Plaintiff's doctors consistently observed full range of motion of the spine, extremities and joints. (Tr. 425-26) (full range of motion of the spine and all major joints); (Tr. 424) (cervical range of motion unrestricted in all planes; unrestricted spine movements in all planes); (Tr. 448, 468, 491, 495, 502, 528, 549) (normal range of motion); (Tr. 502) (full range of motion of cervical spine).

While the record contains few instances of favorable findings occurring around the time of Plaintiff's November 2011 car accident and associated spinal fusion, these are insufficient to

establish a disability at Step Three. *See* 20 C.F.R., pt. 404, subpt. P, app. 1 § 1.00D ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation.").  The Act requires a claimant to demonstrate consistent satisfaction of the Listing's criteria over a period that lasts or is expected to last at least 12 months.  The intermittent abnormal findings mentioned above are insufficient in both duration and consistency to establish disability under Listing 1.04A.[2] *See Trejo v. Comm'r of Soc. Sec.*, 2011 WL 3862332, at *10 (E.D. Mich. June 27, 2011) (Listing 1.04A was not met where "plaintiff failed to establish positive straight-leg tests 'over a period of time' let alone over the requisite 12–month duration. Plaintiff had only one positive straight-leg test result . . . ."); *Lawson v. Astrue*, 2010 WL 1375171, at *4 (W.D. Va. April 5, 2010) (Occasional findings of sensory loss and positive straight leg raising tests were insufficient; "while Lawson has exhibited all of the criteria of § 1.04(A) at one time or another, there is [no] evidence . . . that she has exhibited all of the requisite symptoms consistently or contemporaneously."); *Ortiz v. Astrue*, 2013 WL 772677, at *4 (D. Mass. Feb. 27, 2013) (Listing 1.04A was not met where "Ortiz also did not demonstrate  positive straight leg raise test results for a continuous twelve month period.").

In the alternative, Plaintiff suggests that the ALJ was duty bound to grant her post-hearing request for medical expert testimony on the issue of medical equivalence. (R. Doc. 9 at 10).  However, no such duty exists.  Instead, an ALJ may ask a medical expert to testify about whether an individual meets or medical equals a listing, but such testimony is not required where the medical record is sufficiently developed. *See* 20 C.F.R. § 416.927(e)(2); *see also Dominguez v. Astrue*, 286 F. App'x 182, 186 (5th Cir. 2008) ("[T]he use and consideration of medical expert

---

[2] Consistent with the Court's recommendation, during the hearing, Plaintiff's attorney stated on two occasions: "I don't think this is a listing case . . . ." (Tr. 33) ("Again, not a listing case.").

testimony is solely within the discretion of the ALJ."); *White v. Soc. Sec. Admin*., 129 F. App'x 905, 906 (5th Cir. 2005) ("[T]he record was sufficiently developed and, therefore, the ALJ was not required to obtain additional medical expert testimony.").

Here, the ALJ did not commit reversible error by refusing to conduct a supplemental hearing to take medical expert testimony. As discussed above, the record contained objective medical evidence sufficient for the ALJ to make a proper determination of whether Plaintiff was disabled, including a determination of whether Plaintiff's impairment satisfied a listing. As such, the Court finds substantial evidence supports the ALJ's finding at Step Three.

### B.    Residual Functional Capacity

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco*, 27 F.3d at 163-64. A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

Here, the ALJ determined Plaintiff could perform sedentary work, but that she "must be allowed to change positions in her work space, resulting in claimant being off-task less than five

percent of the workday." (Tr. 17).  In her Opening Brief, Plaintiff first argues that substantial evidence does not support the RFC because she, "in testimony, relayed her physical and mental limitations to the ALJ and those limitations would clearly suggest that the claimant cannot maintain regular and continuing employment due to her impairments." (R. Doc. 9 at 11). Plaintiff does not name a single "physical [or] mental limitation" that she believes to be both supported by the objective record evidence and inconsistent with the RFC.  Moreover, she does not point to any particular piece of evidence that might cast doubt on the ALJ's RFC finding. Instead, she cites to her hearing testimony, in general, and to the universe of treatment notes listed in the previous section of her Opening Brief. (R. Doc. 11 at 14) (citing Tr. 39-43 and 46-50 of the hearing); (R. Doc. 13-1 at 2-3) (in her Reply, Plaintiff repeats the general list of treatment notes listed in her Opening Brief as support for her Step Three argument).  Plaintiff's conclusory argument is insufficient.  Because Plaintiff has not pointed to a single limitation or piece of evidence for the Court to consider, Plaintiff has not cast doubt on the existence of substantial evidence supporting the RFC.

In addition to her more conclusory argument, Plaintiff next claims that substantial evidence does not support the RFC as she testified that her impairments cause "a number of bad days per month that far exceeds any acceptable rate of on the job absence." (R. Doc. 9 at 11). During the hearing, Plaintiff testified that she could not work because she has "more bad days than [she] do[es] good" (Tr. 39), and claimed that for 10 days out of each month she is "just hurting so bad" that she "can't get out of bed." (Tr. 47).  Relying solely on this testimony, Plaintiff therefore "submits that her medically determinable impairments would [] preclude the sustained performance of work activity at any level . . . ." (R. Doc. 9 at 11).

The ALJ, however, did not credit Plaintiff's testimony because it was inconsistent with Plaintiff's activities of daily living, her previous statements to the Commissioner and to her doctors, and with the "normal exams and testing, as well as conservative care rendered" since her 2011 car accident. (Tr. 19, 22); (Tr. 36, 40) (Plaintiff initially admitted that "[o]n a normal day," she "sit[s] around and watch[es] TV," but later testified that she could not sit for longer than 15 minutes at a time); (Tr. 36, 467, 431) (During the hearing, Plaintiff described her pain as "constant," but she inconsistently reported that she had no back pain, no muscle pain and no radiating pain to her doctors.); (Tr. 336) (encouraged by doctors to get off of prescribed pain medications); (Tr. 459, 466, 468) (exam revealed normal strength and gait); (Tr. 549) (After an x-ray of Plaintiff's right hip showed no abnormalities and physical examination showed "no evidence" of any lack of motion in her right hip and lower extremities within normal limits, Plaintiff's doctor reported that he "wouldn't recommend any treatment for [her] right sacroiliac pain."); (Tr. 435, 438, 439) (imaging of Plaintiff's thoracic spine, cervical spine and lumbar spine showed no abnormalities).

Significantly, Plaintiff has not challenged the ALJ's credibility finding or otherwise claimed that it is not supported by substantial evidence.  The Court, therefore, will not disturb the ALJ's unchallenged credibility finding that Plaintiff's limitations were not as severe as alleged. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) (ALJ may disregard claimant's subjective symptomology to the extent it is inconsistent with the record evidence under a proper exercise of discretion as the finder of fact).

Aside from the ALJ's credibility finding, Plaintiff's testimony alone is not conclusive evidence of disability; instead, Plaintiff must rely on objective evidence of medical impairments that could reasonably be expected to produce the symptoms and limitations she alleges. *Harper*

*v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989) (claimant's subjective testimony does "not take precedence over conflicting medical evidence").  Plaintiff again does not identify any specific treatment notes or other objective medical evidence to corroborate her testimony or otherwise cast doubt on the ALJ's RFC finding. (R. Doc. 9 at 11).

In her Reply Memorandum, Plaintiff directs the Court to the universe of treatment notes cited as support for her Step Three argument in her Opening Brief. (R. Doc. 13-1 at 2-3); (R. Doc. 9 at 8-10).  However, Plaintiff's citation to a lumped-together group of treatment notes is no better that if she had simply cited the entire administrative transcript.  The Court has no way of knowing which particular pieces of evidence Plaintiff claims supports her allegations or otherwise detracts from the ALJ's RFC finding. *Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (claimant's "poorly organized" and "unclear" briefing did not warrant judicial review of claimant's assignment of error).  On judicial review, Plaintiff must identify specific pieces of evidence that would call the ALJ's RFC finding into doubt.  "It is not the duty of this Court to craft [P]laintiff's argument for her or to comb the record to find evidence that supports her [argument]." *Schultz v. Astrue*, 2010 WL 2733605, at *10 (E.D. La. June 8, 2010) (rejecting claimant's assignment of error as claimant "fails to point to specific evidence in the record that would support her claim"); *see also Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting claimants assignment of error in social security appeal because claimant "provides no analysis of the relevant law or facts" that would cast doubt on the existence of substantial evidence supporting the ALJ's finding).  As such, the Court finds substantial evidence supports the ALJ's RFC finding.

**C.     Reliance on Vocational Expert Testimony at Step Four**

Plaintiff's final assignment of error concerns the ALJ's reliance on the Vocational

Expert's hearing testimony to find Plaintiff capable of performing her past relevant work as an

Administrative Assistant (DOT No. 169.167-010, sedentary, SVP 7) and a Customer Service

Representative (DOT No. 239.362-014, sedentary, SVP 5). (Tr. 22).  During the hearing, the ALJ

posed hypothetical questions to the VE who, in response, opined whether Plaintiff could perform

any of her past relevant work, or any other work, given the limitations outlined in the

hypotheticals:

> ALJ:   [F]or purposes of [hypothetical number 1], assume an individual . . .
> limited to light work . . . [who] can change positions at will but would be
> off task five percent of the time or less . . . . Are there any of [Plaintiff's]
> past jobs she can do or any other jobs?

> VE:    I think that both the administrative assistant job and the customer service
> representative would fit that.  I think anything else wouldn't allow for that
> change of - - you know, postural [sic] at will. . . . You know, that five
> percent off task . . . that can kind of go either way. It just depends on [the
> employer.]

> ALJ:   My second [hypothetical] [i]s limited to sedentary. But again she would
> have to change positions at her work - - in her workspace and would be off
> task less than five percent of the time.

> VE:    Okay. Same answer. They're both - - both of those jobs are sedentary.

(Tr. 63-64).  Plaintiff's attorney then interjected, asking for clarification:

> ATTY:  Only question I have was with an observation you made with regard to the
> five percent off task. And I think the comment you made about that is that
> it might depend on the employer as to whether or not that would be
> accept[able].

> VE:    Yeah. That was taking that at a full five percent. And of course [the ALJ]
> changed her hypothetical . . . .

> ALJ:   From five percent or less [(in the first hypothetical)] to less than five
> percent [(in the second hypothetical)]. . . . .

> VE:    But with the first [hypothetical] . . . I think . . . [i]t depends on the
>        employer. . . .

(Tr. 64-65).  To ensure any confusion on the part of Plaintiff's attorney had been resolved by the

VE, the ALJ clarified:

> ALJ:   So moving it to [being off-task] less than five percent [of the time (in the
>        second hypothetical)] would make it something that you feel would be
>        tolerable and consistent with sustained work?

> VE:    Sure.

(Tr. 65).  Plaintiff's attorney then immediately posed his own variation on the ALJ's second

hypothetical to the VE, consisting of the following limitations:

> ATTY:  What about if it were sedentary with the stipulation that after 30 minutes
>        of sitting the person would have to be up for three to - - say four, five
>        minutes . . . . walk[ing] around, stand[ing], [stretching].

> VE:    [S]o there again I think it would - - a lot of it would depend upon the
>        employer. It may even throw it into a situation where it would be a - - the
>        employer making accommodations.

(Tr. 65-66).  Ultimately, the ALJ adopted her second hypothetical (sedentary work with the

ability to change positions at-will, resulting in Plaintiff being off-task less than five percent of

the workday) as the RFC.  Consistent with the VE's response to the second hypothetical (RFC),

the ALJ found Plaintiff capable of performing her past relevant work as an Administrative

Assistant (DOT No. 169.167-010, sedentary, SVP 7) and a Customer Service Representative

(DOT No. 239.362-014, sedentary, SVP 5). (Tr. 22).

Plaintiff does not challenge the ALJ's finding that she can perform either of her past

relevant jobs, nor does she cite to any evidence in the record, medical or otherwise, as

inconsistent with the ALJ's ultimate finding at Step Four.  Instead, Plaintiff argues that the ALJ

relied on "faulty or incomplete" testimony from the Vocational Expert (VE).  Specifically,

Plaintiff argues that in response to the second hypothetical, the VE "provided no numbers . . . or

data as to what percentage of employers would be willing to [accommodate]" an employee's inability to sit for more than 30 minutes before needing to stand for five minutes. (R. Doc. 9 at 12). Moreover, Plaintiff points out that "individual employer accommodations are not relevant" in social security proceedings. (R. Doc. 9 at 12).

While Plaintiff correctly points out that the availability of reasonable accommodations cannot be considered when determining disability under the Social Security Act, she is mistaken in thinking the VE raised the issue of accommodation in response to the ALJ's second hypothetical. Plaintiff appears to confuse the VE's response to the ALJ's second hypothetical with his response to her attorney's variation on that hypothetical. Plaintiff's attorney — not the ALJ — asked the VE to assume an individual capable of sitting for only 30 minutes before needing to stand for five. As the VE explained, an individual with that specific limitation might require a reasonable accommodation. However, that limitation was not found by the ALJ, nor was it later incorporated into the RFC. Plaintiff also does not cite to any evidence in the record that supports her allegation that she cannot sit more than 30 minutes before needing to stand for five. In fact, Plaintiff testified that "[o]n a normal day," she "sit[s] around and watch[es] TV and stand[s] when [she] can." (Tr. 36).

Expert vocational testimony can constitute substantial evidence in support of an ALJ's ultimate determination when the hypothetical question which elicited it incorporates all of the limitations that the ALJ has found, those limitations are supported by the record and the ALJ's ultimate determination is consistent with the expert vocational testimony. *See, e.g.*, *Boyd v. Apfel*, 239 F.3d 698, 706–07 (5th Cir. 2001); *Chenier v. Apfel*, 2000 WL 1755271, at *6 (E.D. La. Nov. 29, 2000) ("when the ALJ's hypothetical questions to the vocational expert include all the limitations supported by the record, the testimony of a vocational expert constitutes

substantial evidence of a significant number of jobs the claimant can perform." citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)).  The testimony in this case meets these requirements. As such, the Court finds substantial evidence supports the ALJ's Step Four determination and ultimate finding that Plaintiff was not disabled.

## V.    CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and that Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on December 22, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**